IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JOHN NAPPY,

    Plaintiff,

v.                                         Case No. 1:17-cv-254-MW-GRJ

BRITTANY ESTATES GRP. LLC, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on ECF No. 11, Plaintiff's *pro se* amended complaint. The Court previously granted Plaintiff leave to proceed as a pauper. (ECF No. 10.)

A federal court is required to conduct an initial screening of a *pro se* complaint to determine whether the action: (1) is frivolous or malicious or fails to state a claim on which relief may be granted, or (2) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e).[1] A claim is frivolous, and must be dismissed, when it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091,

---

[1] The screening process under § 1915A also applies to non-prisoner *pro se* litigants who are proceeding in forma pauperis. *Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002).

1100 (11th Cir. 2008). A district court also may dismiss a complaint if the facts as pled do not state a claim for relief that is plausible on its face. *Sinaltrainal v Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009)). A *pro se* litigant's allegations are entitled to the benefit of liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, a court does not have "license . . . to rewrite an otherwise deficient pleading [by a pro se litigant] in order to sustain an action." *GJR Invs. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir.1998) (*overruled on other grounds* by *Iqbal*, 129 S. Ct. 1937*).*

"Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* Conclusory allegations that "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim" are "not entitled to be assumed true . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 1951–53 (2009). To escape dismissal, the complaint must allege facts sufficient to move claims "across the line from conceivable to plausible." *Id.* "The plausibility standard is met only where the facts alleged enable 'the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' . . . . The complaint's allegations must establish 'more than a sheer possibility that a defendant has acted unlawfully.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

Plaintiff purports to bring his case in federal court pursuant to 18 U.S.C. §§ 1961–68, the Racketeer Influenced and Corrupt Organizations Act ("RICO Act"), as well as 28 U.S.C. § 1332. Plaintiff, a resident of New York, owns a mobile home located in Brittany Estates, which is a mobile home park in Gainesville, Florida. He names the following as Defendants: (1) Brittany Estates Group, LLC, a corporate entity located in Alachua County, Florida, which is the manager and operator of Brittany Estates; (2) RHP Properties, LLC, a private owner and operator of manufactured and mobile home communities throughout the United States; (3) Karla Quinones,[2] a resident of Florida and the current on-site manager of Brittany Estates; (4) Scott Blasko, a resident of Florida and the regional manager of RHP Properties; (5) Gabriel Crafton,[3] a resident of Florida and Defendants' attorney; and (6) David Hale, president of Brittany Estates and

---

[2] The original complaint named this Defendant as "Karla Quintanos."

[3] It is unclear whether the proper name is "Crafton" or "Grafton," as Plaintiff utilizes both in the amended complaint.

RHP Properties.

Plaintiff's allegations center around the purchase of and subsequent occupancy in a mobile home located on a rented lot in Brittany Estates. When Plaintiff purchased the lot the on-site manager told Plaintiff he would receive one month's rent for free. From June 2016 through August 2017, Plaintiff paid Brittany Estates the $420 lot rental fee. He says he never received the $420.00 credit he was promised before purchasing the lot. Plaintiff also says he requested accounting statements from Defendant Quinones setting forth the rental charges Plaintiff paid, but never received the statements.

Plaintiff says during July and August 2017 Defendant Quinones posted notices on Plaintiff's door and mailed notices to Plaintiff demanding that he pay additional fees, including a $5.00 late fee and a $0.02 fee for nonpayment of rent.

Then on August 7, 2017, Plaintiff received a phone call from Defendant Quinones in New York demanding that Plaintiff pay another $1,000.00, which Plaintiff says he did not owe. Defendant Quinones told him that legal proceedings would commence if Plaintiff did not pay.

On August 10, 2017, Plaintiff went to the Brittany Estates office, met with Defendant Quinones, and gave her proof of payment of all rent since

purchasing the mobile home.

On approximately August 20, 2017, Defendant Blasko told Plaintiff that he was current with rent payment through July 2017, that all other fees were waived, and that the total amount due through and including August 2017, was $486.00. Accordingly, on August 22, 2017, Plaintiff delivered Defendant Quinones two money orders totaling $300.00 and a personal check in the amount of $186.00, for a total of the $486.00.

Nevertheless, Plaintiff says Defendants continued to harass him in an attempt to extort money from Plaintiff to which they were not entitled. For example, during the last week of August 2017, Plaintiff received two phone calls from Defendants. First, from Defendant Quinones, telling Plaintiff he must pay more than $1000.00 or she would not accept any rent payments. Second, from Defendant Crafton, telling Plaintiff he needed to pay another $2000.00 to avoid legal action.

Then, the September 2017 rent ledgers failed to note the $486.00 payment that Plaintiff had provided to Defendant Quinones.

Plaintiff says Defendants committed mail fraud, wire fraud, and devised or intended to devise a scheme meant to defraud Plaintiff and other residents, thereby engaging in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(b). He claims this unlawful activity occurred

during the five years preceding June 2016.

Plaintiff also says Defendants committed fraud based on the aforementioned allegations. He says Defendants' misconduct was outside the boundaries of acceptable behavior in the mobile park industry and in violation of state and federal laws.

Plaintiff further claims Defendant Brittany Estates committed breach of contract. He says Defendant Brittany Estates failed to provide him with a lot that would safely support his mobile home, failed to repair the water erosion damage on his lot and throughout the mobile home park, denied Plaintiff quiet enjoyment of the premises, and failed to credit Plaintiff with the one-month free rent promised to Plaintiff.

Finally, Plaintiff alleges Defendant Brittany Estates was negligent by failing to act as a competent, similarly situated landlord would act and prevent Plaintiff from unreasonable risk of foreseeable harm. Specifically, Plaintiff claims Defendant Brittany Estates rented lots which had serious damage, failed to repair them, failed to provide Plaintiff with an accurate accounting statement for his lot, and failed to prevent its employees from harassing Plaintiff.

The amended complaint is largely identical to Plaintiff's original complaint. The Court screened Plaintiff's original complaint, identified

multiple deficiencies, and provided Plaintiff an opportunity to file an amended complaint remedying the deficiencies. (ECF No. 10.) None of those deficiencies have been remedied, however, by the instant amended complaint.

For starters, Plaintiff again failed to file his amended compliant on the proper court-approved form for *pro se* litigants. As the Court previously advised Plaintiff, this form includes pertinent information necessary to properly review Plaintiff's claims. (*Id.*)

Plaintiff has also failed to demonstrate that the Court has subject matter jurisdiction over his claims based on diversity of citizenship. "Diversity jurisdiction exists over a controversy between citizens of different states." *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002). For diversity purposes, "citizenship" means domicile. *Id.* Domicile "is the place of [a person's] true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *Id.* at 1257–58 (citation omitted). Mere residency in a state is not sufficient to establish diversity. *Jagiella v. Jagiella*, 647 F.2d 561, 563 (5th Cir. 1981); *Rivas v. The Bank of New York Mellon*, 676 F. App'x 926, 930–31 (11th Cir. 2017) (district court properly dismissed state law claims for lack of subject matter jurisdiction where complaint alleged

only residency or location of offices for certain defendants and therefore failed to establish that plaintiff's citizenship was diverse from each defendant's citizenship); *Lugo v. JetBlue Airways Corp.*, No. 8:16-cv-2750-T-30AEP, 2017 WL 2263241, at *2 (M.D. Fla. May 24, 2017) (remanding case to state court where complaint, which merely alleged plaintiff was a resident of Florida, failed to establish citizenship for diversity purposes).

Although Plaintiff may arguably be a citizen of New York,[4] his amended complaint, like his original complaint, fails to allege the citizenship of each Defendant. Instead, the amended complaint alleges that Defendant Quinones, Defendant Blasko, and Defendant Crafton are *residents* of Florida. And even assuming Plaintiff had alleged that these individual Defendants were *domiciled in* or *citizens* of Florida, he nonetheless fails to allege the citizenship of Defendant Hale or Defendant RHP Properties.[5] The face of the amended complaint therefore fails to

---

[4] Although Plaintiff admits that he owns the mobile home and lived in Gainesville, Florida until at least August 2017 (prior to filing this action on October 17, 2017), Plaintiff alleges in the amended complaint that he is a full-time resident of New York, is registered to vote in New York, has a New York driver's license, and spends most of the year in New York.

[5] As in the original complaint, the amended complaint merely alleges that Defendant RHP Properties is "the largest private owner and operator of manufactured and mobile home communities in the United States." (ECF No. 11 at 2.) Although Defendant Hale was not named in the original complaint, Plaintiff listed Defendant Hale in the caption of the amended complaint but did not list Defendant Hale under the "Parties" section and therefore did not include citizenship allegations pertaining to Defendant Hale.

properly allege diversity of citizenship.

Plaintiff has also failed to establish that the Court has federal jurisdiction over his claims under § 1962(b) of the RICO Act. Section 1962(b) makes it "unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232 (1989) (section 1962(b) "renders criminally and civilly liable 'any person' . . . who acquires or maintains an interest in or control of such an enterprise 'through a pattern of racketeering activity'").

> In order to prove a pattern of racketeering in a civil or criminal RICO case, a plaintiff must show at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity. . . . . "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time."

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290–91 (11th Cir. 2010) (internal citations omitted).

Where a plaintiff's RICO claim is based on an alleged pattern of racketeering premised on the predicate acts of mail and wire fraud, his "substantive RICO allegations must comply not only with the plausibility

criteria articulated in *Twombly* and *Iqbal* but also with Fed. R. Civ. P. 9(b)'s heightened pleading standard, which requires that 'in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" *Id.* at 1291. In the Eleventh Circuit, the heightened pleading standard under Rule 9(b) requires a plaintiff to allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Id.* (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997)). Furthermore, "[t]he plaintiff must allege facts with respect to each defendant's participation in the fraud." *Id.* (quoting *Brooks*, 116 F.3d at 1381).

As with Plaintiff's original complaint, the two racketeering predicate acts in the amended complaint—mail fraud and wire fraud—fail to comply with Fed. R. Civ. P. 9(b)'s heightened pleading standard. With respect to mail fraud, Plaintiff says Defendants sent rent ledgers to Plaintiff through the United States mail, which Defendants knew contained false information. Plaintiff claims Defendants falsely state they spent, or are owed money from residents, which they collect and misappropriate for their

own illegitimate, non-business purpose. For example, Plaintiff claims Defendant RHP says it expends money for capital improvements in their parks, bill and collect the money from residents, then never do the capital improvements and instead wrongfully use the monies.

As to wire fraud, Plaintiff says Defendants Quinones and Crafton called Plaintiff in New York from Florida, demanded he pay $1,000 and later, $2,000, and threatened that they would initiate eviction proceedings if Plaintiff did not pay the amounts. Plaintiff says he did not owe these monies and that the false statements were used to defraud residents.

As the Court previously advised Plaintiff, these allegations are insufficient to meet the heightened pleading standard under Rule 9(b) to plausibly allege the predicate acts of mail fraud and wire fraud. Moreover, these allegations also fail to suggest how the other Defendants participated in the mail fraud and wire fraud.

Even assuming Plaintiff had met the heightened pleading standard under Rule 9(b), Plaintiff has failed to plausibly allege that Defendants violated § 1962(b). The amended complaint does not suggest how each Defendant acquired or maintained, through a pattern of racketeering activity, an interest in or control over an enterprise that is engaged in, or the activities of which affect interstate or foreign commerce. Instead,

Plaintiff merely alleges in a conclusory manner that "Defendants have operated, and continue [to] operate as an 'enterprise' within the meaning of RICO, the activities of which [a]ffect interstate and foreign commerce," and that "[b]y virtue of the predicate acts . . . Defendants transferred, received, furthered and supplied financing and income that was derived, both directly and indirectly, f[ro]m a pattern of racketeering activity in which each of them, both corporate and individuals, participated as a principal." (ECF No. 11 at 13.)

Nor does the amended complaint suggest that Plaintiff suffered any type of injury from Defendants' acquisition or maintenance of an interest in or control over an enterprise. *See Fuller v. Home Depot Servs.*, 512 F. Supp. 2d 1289, 1294 (N.D. Ga. 2007) (discussing how § 1962(b) requires an acquisition injury); *Club Car, Inc. v. Club Car (Quebec) Import, Inc.*, 276 F. Supp. 2d 1276, 1288 (S.D. Ga. 2003) (dismissing § 1962(b) claim for failure to demonstrate any injury resulting from acquisition of an enterprise). While Plaintiff claims he "suffered the loss of valuable property, financial services and support, and suffered other personal business and pecuniary damages," (ECF No. 11 at 13), this allegation is conclusory and wholly fails to suggest how these alleged injuries arose from Defendants' acquisition or maintenance of an interest in or control over an enterprise.

Furthermore, because Plaintiff has failed to demonstrate that the Court has either original jurisdiction pursuant to 28 U.S.C. § 1331, or diversity of citizenship under § 1332, the Court lacks subject matter jurisdiction over his state law fraud, negligence, and breach of contract claims. *See* 28 U.S.C. § 1367(a) ("in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy").[6]

Finally, as with the original complaint, Plaintiff has failed to adequately state what each Defendant did, or did not do, in support of each claim. Plaintiff's amended complaint consists of seven and a half pages of factual allegations, followed by various claims that each incorporates all preceding paragraphs—including allegations contained within each prior claim. Plaintiff's amended complaint is therefore a shotgun pleading, which is disfavored in the Eleventh Circuit. *See, generally*, *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320–23 (11th Cir. 2015) (discussing the different types of shotgun pleadings). The Court is unable to discern which factual allegations support

---

[6] Although Plaintiff's state law claims also appear to be deficient, the Court declines to address them at this juncture.

which claims, and which factual allegations link each Defendant to each claim.

While the Court would typically allow a *pro se* litigant an opportunity to amend his complaint, the Court previously advised Plaintiff of each of the aforementioned deficiencies and gave him an opportunity to file an amended complaint. (ECF No. 10.) The instant amended complaint fails to remedy any of the deficiencies the Court previously identified. Providing Plaintiff a second opportunity to remedy the same deficiencies would therefore be futile.

Accordingly, it is respectfully **RECOMMENDED** that this case should be **DISMISSED** for lack of subject matter jurisdiction and for failure to state a claim.

**IN CHAMBERS**, this 3rd day of January 2018.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party**

**fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**